**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15-cv-02744-CMA-KMT

CLINTON T. ELDRIDGE,

    Plaintiff,

v.

A. OSAGIE, P.A.,
G. SANTINI, M.D., and
P. LAIRD, R.N.,

    Defendants.

---

**ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE KATHLEEN M. TAFOYA**

---

This matter is before the Court on review of the Report and Recommendation by United States Magistrate Judge Kathleen M. Tafoya (Recommendation) (Doc. # 44), issued on January 23, 2017, and recommending that this Court grant Defendants' Motion to Dismiss Plaintiff Clinton T. Eldridge's Eighth Amendment claims against them (Doc. # 31). The Recommendation is incorporated herein by reference. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). For the following reasons, the Court adopts the Recommendation and grants Defendants' Motion.

### I.    STANDARD OF REVIEW

Mr. Eldridge objects to the Recommendation in its entirety. Federal Rule of Civil Procedure 72(b)(3) thus requires that this Court conduct a de novo review of the issues. In so doing, the Court "may accept, reject, or modify the recommended disposition;

receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* Any arguments raised for the first time in objections are deemed waivable and need not be considered by this Court. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

## II. BACKGROUND

In his Amended Complaint, Mr. Eldridge, an inmate at the Administrative Maximum facility of the Federal Correctional Complex in Florence, Colorado, argues that for the past ten years, Defendants A. Osagie, a physician assistant, and G. Santini, a physician, have denied him treatment for HCV in violation of his rights under the Eighth Amendment. (Doc. # 12 at 4–5, 7.) He also contends that Defendant P. Laird, a Bureau of Prisons (BOP) Regional Director, violated his Eighth Amendment rights by rejecting a requested medical transfer to a facility that would provide better HCV treatment. (*Id.* at 8–10.) Defendants contend that Mr. Eldridge has failed to sufficiently plead these claims and that his Amended Complaint should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6).[1]

## III. LAW GOVERNING A RULE 12(b)(6) MOTION TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for failure to state a claim if it appears beyond a doubt that the plaintiff can plead no set of facts in support of his claim that would entitle him to relief. *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). Dismissal under Rule 12(b)(6) may also be based on the

---

[1] The Amended Complaint initially included an Eighth Amendment claim based on an alleged failure to provide medical treatment related to a musculoskeletal disorder (Doc. # 12 at 12–14), but that claim has since been dismissed pursuant to 28 U.S.C. § 1915 (Doc. # 44).

lack of a cognizable legal theory.  *Id.* at 1217.  In reviewing a motion to dismiss, courts take all well-pleaded allegations in the plaintiff's complaint as true and construe the allegations in the light most favorable to plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).

However, a litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint").

Mr. Eldridge appears *pro se* in this matter.  The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  Mr. Eldridge's *pro se* status does not, however, entitle him to the application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).  Moreover, the Court may not "construct arguments or theories for [Mr. Eldridge] in the absence of any discussion of those issues."  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

## IV.    **MR. ELDRIDGE'S EIGHTH AMENDMENT CLAIMS**

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection encompasses "deliberate indifference" by prison officials to a prisoner's serious medical needs. *Howard v. Waide,* 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). Specifically:

> Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle,* 429 U.S. at 104–05 (internal citation omitted).

An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006).

### A.  **THE OBJECTIVE COMPONENT**

The objective component requires a showing that the prisoner's medical need is "sufficiently serious" to be cognizable under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). This standard is met if the medical need was "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980) (quotation and citation omitted). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but

4

also extends to whether the potential harm to the inmate is sufficiently serious.  *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005).  The Tenth Circuit and other courts in this district have held that untreated HCV, without more, does not satisfy the objective component because HCV "progresses slowly, typically over the course of decades." *Whitington v. Moschetti,* 423 F. App'x 767, 773 (10th Cir. 2011); *see Vasquez v. Davis,* No. 14-cv-01433-WJM-CBS, 2015 WL 6662921, at *5 (D. Colo. Nov. 2, 2015); *Wright v. Hodge,* No. 12-cv-CMA-MJW, 2015 WL 1408753 at *6 (D. Colo. March 25, 2015).

Defendants acknowledge that HCV constitutes a serious medical problem but argue that Mr. Eldridge has not alleged sufficient facts demonstrating that his condition is "sufficiently serious to be constitutionally significant," or that it has progressed to a point that requires medical attention beyond what Defendants are presently providing. (Doc. # 31 at 5.)

Mr. Eldridge argues that his HCV is sufficiently serious, as depicted by his allegedly "off the charts" liver enzyme levels.  (Doc. # 48 at 2.)  He highlights the 2001 evaluation of prison consultant gastroenterologist Dr. Michael B. Wooten, who found Mr. Eldridge's liver functioning and enzyme levels to be normal.   Nonetheless, Dr. Wooten recommended testing Mr. Eldridge's liver function annually and providing a follow-up "percutaneous liver biopsy in perhaps one to two years."  (Doc. ## 12 at 17; 1-2 at 11.) Mr. Eldridge contends that his liver has continued to deteriorate since 2001—adding that his "liver function will never be normal again" and will likely "cause his death."  (Doc. # 48 at 8; Doc. # 12 at 11, describing his condition as "a lifelong handicap that can cause death.")  In support, Mr. Eldridge has submitted his own handwritten

documentation of his alleged platelet counts between 2008 and 2016, and his alleged liver enzyme levels—aspartate aminotransferase (AST) and alkanine aminotransferase (ALT) levels—between 2000 and 2016. The Court cannot rely on Mr. Eldridge's self-created medical charts, none of which are supported by any of the official medical records or physician notes before this Court.[2] Indeed, Mr. Eldridge's personal belief or self-diagnosed ailment, standing alone, cannot sustain an Eighth Amendment claim. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (citing *Aswegan v. Henry*, 49 F.3d 461, 464–65 (8th Cir. 1995); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *see also Hall*, 935 F.2d at 1110 (A litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.").

Moreover, the official medical records submitted by Mr. Eldridge[3] indicate otherwise—that Mr. Eldridge's condition has not risen to the level of "sufficiently serious." Records reveal that, in December 2014, Defendant Osagie informed Mr. Eldridge that his Aspartate Aminotransferase-to-Platelet Ratio Index (APRI) was below 1.0, which, according to the Federal BOP priority levels, does not meet the criteria for the HCV treatment Mr. Eldridge is requesting. (Doc. ## 1-2 at 2; 31-1 at 7–8, 12). Defendant Osagie added, "You will continue to be monitored." (Doc. # 1-2 at 2). Records from October 21, 2015 reflect an APRI level of 1.09, which is still in the low priority level for HCV treatment. (Doc. # 1-2 at 3.)

---

[2] If Mr. Eldridge has official medical records corresponding to his handwritten tables, he has not submitted them to this Court. It is unclear to this Court why he would chose to create and submit his own tables, rather than official prison reports.
[3] Mr. Eldridge has submitted medical records from 2001, 2014, and 2015.

6

Further, nowhere in his Complaint or Objections does Mr. Eldridge allege how his allegedly high enzyme levels render his condition sufficiently serious to support an Eighth Amendment violation, other than to state that sometime in the future, his liver may cause his death. He points to no medical diagnosis supporting this assertion and no obvious, easily recognizable reason for medical attention beyond what he is already receiving. *See Whitington*, 423 F. App'x at 773 (holding that plaintiff failed to show substantial harm based on a delay in HCV treatment because there was no evidence suggesting substantial progression of liver disease). That, as Mr. Eldridge states, "HCV is a serious disease that can result into a number of medical problems from cancer of the liver, liver failure, and death" does not mean that Mr. Eldridge is currently suffering, or will ever suffer, from HCV at that magnitude. (Doc. # 48 at 8.) *See Roe v. Elyea*, 631 F.3d 843, 848 (7th Cir. 2011) ("One-third of persons with chronic HCV infection show no evidence of liver disease.").

It appears that Mr. Eldridge simply disagrees with Defendants' current assessment of his condition and the likelihood of future harm, but mere disagreement is insufficient to support an Eighth Amendment violation. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (an inmate's difference of opinion regarding his condition or medical treatment does not generally support a claim for cruel and unusual punishment).

Based on this Court's review of the parties' arguments and the medical evidence submitted, the Court concludes that Mr. Eldridge has not pled enough facts to support that his chronic HCV meets the criteria for objective harm under the Eighth Amendment.

B. <u>**THE SUBJECTIVE COMPONENT**</u>

Under the subjective component, the defendant must have a "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (citation omitted); *see also Self,* 439 F.3d at 1230–31. In other words, the plaintiff must establish that the defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted). "Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. The question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'" *Martinez v. Beggs,* 563 F.3d 1082, 1089 (10th Cir. 2009) (quoting *Mata,* 427 F.3d at 753). This is a high standard. "[N]egligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999); *Vasquez*, 2015 WL 6662921, at *7.

Here, the Court's primary inquiry is whether Defendants' responses to Mr. Eldridge's medical needs were proportional to the symptoms that Defendants knew about or should have known. *See Self*, 439 F.3d at 1233–34 (no deliberate indifference where prisoner presented with cough, fever, and other non-specific symptoms and prison doctor provided medication consistent with a respiratory infection).

Medical records from 2001, 2014, and 2015, as well as Mr. Eldridge's own notes reflecting his alleged enzyme levels between 2001 and 2016, demonstrate that

Defendants have been monitoring Mr. Eldridge's condition as Dr. Wooten recommended and according to BOP policy. (Doc. ## 1-2 at 2; 31-1 at 7–8). The records reveal that the prison has been checking, and will continue to monitor, among other things, Mr. Eldridge's AST and corresponding APRI levels. According to Federal BOP policy, Mr. Eldridge's levels are in the lowest priority category for treatment. (Doc. # 31-1 at 7–8, 12.)

Nonetheless, Mr. Eldridge appears to be challenging Defendants' chosen course of treatment, arguing that he should be provided different tests and given another liver biopsy.[4] He bases this challenge on his own understanding of his liver enzyme levels, which, as mentioned, is unsupported by the medical evidence that he has provided this Court. To sufficiently plead an Eighth Amendment claim, Mr. Eldridge must allege "deliberate refusal to provide medical attention, as opposed to a particular course of treatment"; he has not met this standard. *Fleming v. Uphoff, et. al.*, No. 99-8035, 2000 WL 374295, at *2 (10th Cir. April 12, 2000) (internal quotations omitted); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("[W]hether one course of treatment is preferable to another [is] beyond the [Eighth] Amendment's purview."). To the extent that Mr. Eldridge is arguing that Defendants have improperly delayed medical treatment, i.e. by not giving him a liver biopsy, that allegation, without more, is also insufficient to support an Eighth Amendment claim. *See Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."). Finally, Mr.

---

[4] Records reflect that Mr. Eldridge was given a liver biopsy in 2001.

Eldridge has not alleged that Defendants have done anything to worsen or exacerbate his HCV.  *C.f. Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that plaintiff sufficiently stated a cause of action under the Eighth Amendment by alleging that defendants had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health).

Viewing Mr. Eldridge's factual allegations and supporting documentation in the light most favorable to him, the Court cannot conclude that Mr. Eldridge has sufficiently pled that the Defendants knew or should have known that he faced a substantial risk of harm and deliberately disregarded it.  In other words, Mr. Eldridge has failed to sufficiently plead the subjective prong of an Eighth Amendment claim.

Because Mr. Eldridge has not sufficiently plead either prong of the deliberate indifference inquiry, the Court agrees with Magistrate Judge Tafoya that his Eighth Amendment claims against Defendants should be dismissed.

### C. MEDICAL TRANSFER REQUEST

Mr. Eldridge also asserts an Eighth Amendment claim against Defendant Laird based on Defendant Laird's alleged denial of Mr. Eldridge's medical transfer "for HCV and all of [his] medical problems."  (Doc. # 12 at 8.)  Mr. Eldridge does not specify what constitutes his other "medical problems," and with regard to his HCV, the Court agrees with Magistrate Judge Tafoya that Mr. Eldridge's medical transfer claim is premised on this Court finding that the Eighth Amendment warrants treatment not currently being provided to him.  Because this Court already concluded otherwise, his Eighth Amendment medical transfer claim against Defendant Laird necessarily fails.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff Clinton T. Eldridge's Objections to the Recommendation (Doc. # 48) are OVERRULED.

2. The Report and Recommendation of Magistrate Judge Tafoya (Doc. # 44) is AFFIRMED AND ADOPTED as an Order of this Court.

3. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 31) is GRANTED.

DATED:  February 27, 2017                    BY THE COURT:

*Christine M Arguello*

CHRISTINE M. ARGUELLO
United States District Judge